[Civ. No. 65528. Second Dist., Div. Three. Mar. 17, 1983.]

J. ARTHUR MOORE, Plaintiff and Respondent, v.
OHIO CASUALTY INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

George C. Montgomery and Bruce M. Thornton for Defendant and Appellant.

Boyle, Olson, Poole & Robinson, John H. Poole and John L. Poole for Plaintiff and Respondent.

OPINION

**KLEIN, P. J.**—Defendant and appellant the Ohio Casualty Insurance Company (Ohio) appeals from the granting of a judgment in an action to enforce an undertaking in which the trial court awarded to plaintiff and respondent J. Arthur Moore (Moore) the full amount of the $8,500 undertaking issued by Ohio as surety guaranteeing compliance by Miguel Taico and Antonio Taico (Taicos).

We modify the trial court's award and affirm as modified.

### PROCEDURAL AND FACTUAL BACKGROUND

On June 27, 1980, the trial court granted Moore's motion for summary judgment in an unlawful detainer action against the Taicos. Three days later the trial court issued a writ of execution and ordered the Taicos to surrender possession of the property involved and to pay rent from the end of the lease period until they vacated the premises.

The Taicos appealed the summary judgment and also obtained an order staying execution of the judgment for five days. The order also granted a further stay until September 5, 1980, contingent upon the Taicos posting an $8,500

undertaking. The Taicos obtained the undertaking from Ohio and filed it on July 8, 1980.

On October 24, 1980, the appellate court dismissed the Taicos' appeal for failure to pay the filing fee. Soon thereafter Moore filed a notice of hearing for forfeiture of the undertaking, along with the required affidavits. The affiants declared that on September 6, 1980, they observed persons at work on the property, together with equipment and a guard dog. Antonio Taico filed an affidavit on December 3, 1980.

On May 7, 1981, the trial court issued a notice of intended ruling finding that the Taicos' "bond had nothing whatsoever to do with the appeal" and that Ohio had not submitted an affidavit to refute the Moore affidavits. On June 17, 1981, the same court awarded the full amount of the undertaking to Moore. Ohio's appeal followed.

### CONTENTIONS

Ohio contends that the trial court exceeded its statutory authority by requiring the Taicos to post an undertaking to stay execution of a judgment pending appeal, and that therefore the undertaking did not create in the surety an enforceable obligation. Further, Ohio argues that the trial court erroneously ruled that Ohio had not filed a counteraffidavit for purposes of the Code of Civil Procedure section 1058a proceeding.[1] Finally, Ohio claims that the trial court should not have awarded Moore the full amount of the undertaking.

### SUMMARY DISPOSITION

We affirm the trial court's rulings leading up to the rendering of the judgment for Moore, but hold that the amount of the judgment must be modified.

■ The posted undertaking did not pertain to the Taicos' appeal but rather the Taicos voluntarily filed it as a "common law bond" to stay enforcement of the judgment requiring vacation of the premises and payment of rent, which judgment was properly rendered by the trial court. Even assuming Ohio could rely on Antonio Taicos' affidavit for Code of Civil Procedure section 1058a

---

[1]Code of Civil Procedure section 1058a reads in relevant part: "Judgment may be entered in accordance with the notice against the person or persons served therewith, unless such person or persons shall serve and file an affidavit or affidavits in opposition to the motion showing such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact." (Stats. 1972, ch. 391, § 2.)

Although the Legislature repealed Code of Civil Procedure section 1058a in 1982 (Stats. 1982, ch. 517, § 176, p. 2361), it remained in effect for bonds and/or undertakings posted prior to January 1, 1983. (Code Civ. Proc., § 995.020, subd. (b); Stats. 1982, ch. 517, § 414, subd. (b), p. 2433.)

purposes, said affidavit failed to contradict Moore's statements. Finally, the undertaking covered the back rent, but the award is modified to reflect the total of the back rent and daily rental for the stay period.

## DISCUSSION

### 1. *The undertaking had nothing to do with the appeal.*

Despite the wording of the July 3, 1980, minute order, we find no merit in Ohio's contention that the Taicos posted the undertaking in question to stay execution upon appeal. Instead, the undertaking secured a stay of execution of the summary judgment, allowing the Taicos time to vacate Moore's property and to pay the back rent.

The terms of the undertaking point to this conclusion. Appeal undertakings can issue only pursuant to statutory provision[2] but neither the Taicos nor Ohio listed such authority in the space provided on the document posted. Also, the undertaking in question covered a stay that ran for a specified term, from July 8, 1980, to September 5, 1980, a period much too short to cover an entire appeal process.[3]

In addition, Taicos' attorney regarded the appeal as unimportant. Taicos' attorney knew that not paying the filing fee and failing to designate the record on appeal were grounds for dismissal. In fact, it appears that the Taicos' undertook the appeal merely to obtain a stay of execution in case the trial court did not allow a stay with a posted undertaking. Since the trial court did grant such a stay, the appeal became unnecessary and Taicos' attorney did not pursue it.[4]

In the notice of intended ruling in the proceeding to enforce liability on the bond, the trial court observed: "The [stay] was worked out in Chambers between counsel for Plaintiff and Defendants. The bond had nothing whatsoever to do with the appeal filed by Defendants—which in itself was frivolous. There was no claim made before the court that the judgment was in error or that Plaintiff was not entitled to possession . . . . No other conclusion can be reached, but the subject bond is not an appeal bond."

---

[2] Code of Civil Procedure sections 917.1 through 923 comprise the statutory scheme for undertakings on appeal. The new Bond and Undertaking Law (Stats. 1982, ch. 998, § 1, p. 3659) does not alter these appeal bond provisions.

[3] We take judicial notice that the normal length of time for an appeal from date of filing to the issuance of the opinion exceeds three months. (Evid. Code, §§ 452, subd. (h) and 459, subd. (a).)

[4] In a letter to Moore's attorney dated August 14, 1980, Taicos' attorney wrote "you will notice that we did not designate the record on appeal. Therefore, the appeal will be automatically dismissed. I will not proceed any further with this matter, because in effect our goal has been achieved."

Ohio presented no facts that would lead us to disagree with the trial court's observations. Therefore, we find no reason to alter the trial court's determination that the Taicos did not file the undertaking pursuant to a contemplated appeal.[5]

### 2. *The Taicos voluntarily posted a "common law bond."*

The language of the July 3, 1980, minute order clearly shows that the trial court conditioned the extended stay on the Taicos' posting an undertaking. A similar situation arose in the case of *Baker* v. *Bartol* (1857) 7 Cal. 551, in which the Supreme Court found that the defendant had voluntarily posted a bond so that the court would not appoint a receiver for a trust fund held by the defendant. The court therein proclaimed that "[i]t is true that the court had no power to compel the defendant to execute the bond in question, but it undoubtedly had the power to appoint a receiver, and if Bartol chose to execute a bond, rather than pay the money over to the officer of the Court, it was a voluntary act upon his part, and the bond was good as a common law bond." (*Id.,* at p. 553.)

Because *Baker* still expresses a sound legal principle, we disagree with Ohio's claim that the court "extracted" the undertaking beyond statutory authority. Instead, the Taicos voluntarily posted the undertaking as part of a *private contract* in which Moore, as consideration, agreed to forego his efforts to execute on the judgment. Here also, the trial court had the power to stay the execution of the judgment.

### 3. *Common law bonds are enforceable in California.*

Contrary to Ohio's assertion that California courts have no authority to enforce common law bonds, the courts have long recognized their validity. In 1885, the Supreme Court found valid and enforceable a bond voluntarily posted by a corporate secretary as a condition of further employment. "[W]ith reference to bonds given to individuals and private corporations, 'such matters are the subject of private contract, by which the parties may bind themselves in any manner or to any extent, not violative of public policy or positive statute.' These private contracts are to be interpreted, like other private contracts, with reference to their language and the circumstances under which they were entered into." (*Fresno Enterprise Co.* v. *Allen* (1885) 67 Cal. 505, 508 [8 P. 59].)

---

[5]The Taicos also claim that the undertaking is invalid because of Code of Civil Procedure section 1176 subdivision (a). This section states that in an unlawful detainer action "[a]n appeal taken by the defendant shall not stay proceedings upon the judgment unless the judge before whom the same was rendered so directs."

Although in the present case different judges entered the judgment and stayed the execution thereof, the stay had nothing to do with the appeal. Therefore, Code of Civil Procedure section 1176 subdivision (a) does not apply.

Other cases also have recognized the validity and contractual nature of common law bonds. (E.g., *Baker* v. *Bartol, supra,* 7 Cal. 551; *Savings etc. Soc.* v. *Wennerhold* (1889) 81 Cal. 528 [22 P. 920]; *Rio Grande Oil Co.* v. *Seaboard Surety Corp.* (1934) 139 Cal.App. 164 [33 P.2d 887].)

In the present case, the lower court found that the Taicos voluntarily posted the undertaking to obtain a stay of execution for a period they believed sufficient to vacate the premises and to get enough money to pay the back rent. Pursuant to the Taicos' direction, Ohio issued the undertaking, thereby agreeing to pay Moore upon the Taicos' default both the $4,400 rent judgment and the $36.66 daily rent for the period between June 1 and September 5.

We perceive no reason in statute or public policy, including the newly enacted "Bond and Undertaking Law" found in Code of Civil Procedure sections 995.010 and 996.560, that would require abandonment of the contractual common law bond.

4. *Antonio Taico's affidavit did not raise a triable issue of fact.*

■ Ohio also claims that the trial court erred by not treating Antonio Taico's affidavit of December 3, 1980, as filed on Ohio's behalf. We need not address this issue because the affidavit failed to contradict the Moore affidavits and therefore did not raise a triable issue of fact as required by Code of Civil Procedure section 1058a.[6] Instead, Antonio Taico carefully avoided the averment that the Taicos still occupied the property on September 6, 1980. Taico apparently hoped to finesse the issue with the statement that he and his brother did not work on the premises beyond September 3, 1980, and that he left the gate unlocked on September 5, 1980. Neither of these statements is sufficient to raise a triable issue of fact. Therefore, even if the trial court erred, the Taicos suffered no prejudice.

5. *The surety's liability cannot exceed the principal's liability.*

■ Ohio contends that the trial court erred in its award of the full $8,500 to Moore because Code of Civil Procedure sections 917.4 and 917.9 allow recovery only for actual losses suffered. Conversely, Moore asserts without more that the trial court correctly determined that the Taicos had posted a bond with a "penal sum" and that therefore the court did not err in its award. However, the mere fact that the trial court awarded the full amount of the undertaking does not make the instrument a bond with a penal sum.

As discussed above, the undertaking was unrelated to the Taicos' appeal and therefore the cited sections do not apply. Further, both Civil Code sections

[6]See footnote 1, *ante.*

2787 and 2809 and the terms of the instrument itself lead to the conclusion that Moore should not have been awarded the full face value of $8,500 by way of judgment.

Historically, bonds differed from undertakings essentially in that a bond obligated the surety to pay a sum certain upon default of the principal, while an undertaking bound the surety to pay an unliquidated amount. (12 Am.Jur.2d, Bonds, § 1, p. 478.)[7] However, such a distinction is not recognized in California. Instead, the statutes treat common law bonds and undertakings simply as sureties. Civil Code section 2787 states that "[a] surety . . . is one who promises to answer for the debt, default, or miscarriage of another . . . ." Civil Code section 2809, by limiting the surety's liability to that of the principal, eliminates the difference in liability for bonds and undertakings.[8] In either case, the extent of Moore's damages limits the amount owed on the surety.[9]

Also, the surety posted by the Taicos clearly states that it is an undertaking.[10] Therefore, even if California law did recognize a distinction between bonds and undertakings in determining the proper award, we are still compelled to modify the trial court's award to reflect the actual damages suffered by Moore.

### 6. *The bond's coverage included the back rent.*

■ Finally, Ohio argues that the undertaking covered only possession of the property, and not the back rent of $4,400. In support, Ohio quotes a portion of the notice of intended ruling filed May 7, 1981, which reads: "On July 3, 1980 the court ordered a stay of enforcement of a judgment granting possession of premises at 655 South Raymond, Pasadena, . . ." However, Ohio neglected to include the trial court's further statement, which belies Ohio's contention, to

---

[7]Bonds and undertakings differ also in the signatories required for each. The principal must be a party to a bond but need not be a party to an undertaking. (11 C.J.S., Bonds, § 4, p. 399.)

The new Bond and Undertaking Law continues this distinction in part. While a bond can be executed by either the surety alone or the principal and the surety, an undertaking can be executed by the surety only. (Code Civ. Proc., §§ 995.140, subd. (a) and 995.190.)

[8]Civil Code section 2809 provides: "The obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

[9]In recognition of the confused state of the law regarding statutory bonds and/or undertakings, the Legislature enacted the Bond and Undertaking Law in 1982 (Stats. 1982, ch. 998, § 1, p. 3659) which is now Code of Civil Procedure sections 995.010 through 996.560. Rather than merely giving the full bond amount upon default, this new law states that a judgment on a bond "shall be in an amount determined by the court." (Code Civ. Proc., § 996.460, subd. (b).) Thus, California does not recognize the "sum certain" concept of liability on either common law or statutory bonds and undertakings.

[10]The surety reads in relevant part: "[T]he above named Defendant(s) desires to give an *undertaking* for Stay of Execution per court order of 7-3-80 . . . ." The document itself is denominated an undertaking, although the blanks referring to under what section of the Code of Civil Procedure it was posted are left blank.

the effect that "[t]he delay in regard to possession was sought to enable Defendants to remove equipment and thereby provide ability to pay the rent accrued and that which would fall due as set forth in the judgment." The trial court reasonably concluded that the parties included the $4,400 rent in the undertaking's coverage.

In addition to the back rent, the undertaking included rental of $36.66 for each day the Taicos retained possession of the property between June 1, 1980, and September 5, 1980. We therefore modify the trial court's order that awarded $8,500 to reflect the total of the back rent, $4,400, plus the daily rental of $36.66 for the 97 days of the stay period, for a total award to Moore of $7,956.02, plus interest at the legal rate from September 6, 1980.

## DISPOSITION

The judgment is affirmed as modified.

Lui, J., and Danielson, J., concurred.