Filed 5/7/21  Modified and Certified for Pub. 6/4/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ACCREDITED SURETY & CASUALTY COMPANY, INC.<br><br>    Defendant and Appellant. | F080431<br><br>(Super. Ct. No. CR-18-000990)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Robert J. Taro, Assistant County Counsel, for Plaintiff and Respondent.

-ooOoo-

A surety appeals from an order denying its motion to set aside summary judgment, discharge the forfeiture, and exonerate bail.  The surety contends the setting of the

---

[*]    Before Franson, Acting P.J., Snauffer, J. and DeSantos, J.

amount of bail was unconstitutional and the forfeiture of the full amount of bail was unconstitutional.

We conclude the statutory scheme under which the amount of the criminal defendant's bail was set and subsequently forfeited is not unconstitutional on its face. We further conclude the statutory scheme, as applied to the circumstances of this case, did not unconstitutionally impose an excessive fine or otherwise violate the constitutional rights of the criminal defendant or the surety.

As a separate and independent ground for our decision, we assume a constitutional violation occurred and address the consequences of the assumed violation. Other appellate courts have held that a constitutional violation in setting the amount of a criminal defendant's bail "does not void the underlying bail bond." (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 897 (*Accredited '19*); see *People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226, 233–235 (*North River '20*).) We join those decisions and conclude a violation of the criminal defendant's constitutional rights does not free the surety from its obligations under the bail bond.

We therefore affirm the summary judgment.

## FACTS AND PROCEEDINGS

On April 25, 2018, Angel Adrian Quinonez was arrested for possession of a controlled substance for sale and transportation of a controlled substance. (Health & Saf. Code, §§ 11351, 11352.) The controlled substance was heroin.

On April 26, 2018, Mark Garcia Bail Bonds, as an agent for Accredited Surety & Casualty Company, Inc. (collectively, Surety), signed and delivered bond number AD-00969579 in the amount of $50,000 for the release of Quinonez. The next morning, the superior court filed the bond and Quinonez was released. The bond listed the felony charges and the misdemeanor of driving without holding a valid driver's license in

2

violation of Vehicle Code section 12500, subdivision (a). The complaint setting forth the felony and misdemeanor charges against Quinonez was filed on May 7, 2018.

The bond directed Quinonez to appear in court on May 25, 2018, at 1:30 p.m. The bond stated Surety undertook to have Quinonez appear in court on the date stated to answer the charges against him. The bond also provided: "If the forfeiture of this bond be ordered by the court, judgment may be summarily made and entered forthwith against [Surety] for the amount of its undertaking herein as provided by Sections 1305 and 1306 of the Penal Code."

On May 25, 2018, Quinonez did not appear at the arraignment hearing. The court declared the bond forfeited and a bench warrant was issued. Later in May, the clerk of the superior court mailed notice of the forfeiture to Surety.

In November 2018, Surety filed a motion to extend the appearance period pursuant to Penal Code[1] section 1305.4. Respondent did not oppose the motion. In January 2019, the trial court granted the motion and extended the appearance period to May 28, 2019. Quinonez was not returned to custody on or before that date.

On August 1, 2019, less than 90 days after the expiration of the appearance period, summary judgment on the bond was filed and notice of the entry of judgment was mailed to Surety.

In September 2019, Surety filed a motion to set aside summary judgment, discharge the forfeiture, and exonerate bail. The motion asserted the trial court lacked jurisdiction to enter a summary judgment because the court's setting of bail in the amount of $50,000 was based on an unconstitutional, unenforceable order.

In October 2019, respondent filed an opposition to the motion to set aside, Surety filed a reply, and the trial court held a hearing. Near the end of the hearing, the court stated:

---

[1]     All further statutory references are to the Penal Code unless otherwise noted.

3

"I think that under the current legal construct there are a couple of situations.

"One is the defendant who comes to court has bail set at some amount is not given a hearing as to the appropriate amount of bail. That is one situation.

"Here we have a situation where the defendant could have waited until he went to court and sought a bail review hearing; otherwise, he availed himself of a duly-adopted bail schedule as provided under [section] 1269b(a). I think under that situation the posting of bail was appropriate. I think the bond that guaranteed his return was appropriately posted.

"And I think as far as the early out under [section] 1269b, I think that's not affected by the *Humphrey's*[2] decision, which is up on review at this point anyway."

In response to the court's statement that the criminal defendant could have waited for his court hearing and asked for a bail review, counsel for Surety acknowledged that the court could have kept the defendant in custody longer but "I have not found many judges that go beyond the bail schedule, but maybe that will change." The court responded by stating:

"Well, we do it routinely when we are asked. And I can't speak for other judges, but I think I know what they would say, and that is we look at each case individually. And we look at the defendant's ability to pay as one of those things. We also look at the interest of the public and their safety, and the likelihood that the person is going to show up, the likelihood that he is going to re-offend. [¶] That's what I look at. And when asked, I do that on an individual basis."

---

**2** *In re Humphrey* (2018) 19 Cal.App.5th 1006, affirmed (2021) 11 Cal.5th 135. The trial court correctly concluded the facts in *Humphrey* were different because Quinonez was released within two days without appearing in court. In *Humphrey*, the defendant was not released on bail because he could not afford it. At his arraignment, the trial court set bail according to the bail schedule at $600,000 and, at a subsequent formal bail hearing under section 1270.2, reduced it to $350,000. (*Humprhey*, *supra*, 11 Cal.5th at pp. 144–145.) In effect, Mr. Humphrey was detained because of his indigency. Quinonez suffered no such detention.

4

The court denied the motion to set aside the summary judgment and filed a written order to that effect later that day. Surety filed a timely appeal.

In October 2020, after Surety filed an appellant's opening brief, this court sent the parties a letter directing that the respondent's brief and appellant's reply brief address specific issues relating to (1) the allocation of the burden of proof regarding the existence or nonexistence of a constitutional violation in setting bail and (2) the distinction between a facial challenge and an as-applied challenge to section 1269b's early-out method of obtaining a defendant's release from custody.

## DISCUSSION

Generally, in published opinions addressing the forfeiture or exoneration of a bail bond, this court provides an overview of the contractual nature of bail bonds, the statutory scheme governing the forfeiture of bail and related proceedings (§§ 1305–1308), the principles applied when construing the bail statutes, and the standards of appellate review. (E.g., *People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 999–1000 [statutory framework]; *People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 555–557.) Such an overview is unnecessary in this unpublished opinion because the parties are familiar with those principles and we need only set forth the law governing the issue that resolves this appeal. (Cal. Const., art. VI, § 14 [appellate decisions "shall be in writing with reasons stated"].)

I. CONSTITUTIONAL VIOLATION

A. Surety's Contentions

Surety acknowledges section 1306 allows courts to enter a consent judgment on the bail bond, subject to a surety's right to file a motion under section 1305 to cure the breach or challenge that judgment where the consent is exceeded. Surety also acknowledges this statutory process was found constitutional in *People v. Surety Ins. Co.* (1978) 82 Cal.App.3d 229. However, Surety argues that case "did not consider the

5

constitutionality of [the] sum-certain nature of the consent judgment." Here, Surety raises that issue and challenges the sum-certain aspect of the consent judgment entered on the forfeited bail bond.

Surety's argument asserts (1) the consent judgment entered on a bail bond operates as a forfeiture or penalty, (2) the amount of any penalty imposed by the state government is subject to the Excessive Fines Clause contained in the Eighth Amendment and applied to the states through the Fourteenth Amendment, (3) under those constitutional provisions, the government bears the burden of proving the amount forfeited is not excessive, and (4) a constitutional violation occurred in this case because no proceeding was conducted where the government carried this burden. (See *Timbs v. Indiana* (2019) 139 S.Ct. 682, 687 [Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth Amendment].) To establish a penalty is not excessive, Surety contends the government must prove the amount of the forfeiture passes a proportionality test and then provide the criminal defendant or his innocent indemnitors with an opportunity to demonstrate an inability to pay the amount of the forfeiture.

Surety, recognizing its argument proposes significant modifications of the bail scheme established by the Legislature, contends this court has the responsibility of saving that scheme by imposing an additional procedural requirement to assure the forfeitures are constitutional. Surety also recognizes acceptance of its arguments would cause the bail bond contracts to be rewritten and refers to the principles of law governing the enforcement of a contractual liquidated damages clause. Under California contract law, a liquidated damages provision is valid if (1) fixing the amount of actual damages is impracticable or extremely difficult, and (2) the amount selected represents a reasonable endeavor to estimate fair compensation for the loss sustained. (*Cellphone Termination Fee Cases* (2011) 193 Cal.App.4th 298, 322; see Civ. Code, § 1671 [validity of contract liquidating the damages for its breach].)

6

Surety argues its proposed procedure for determining the amount to be forfeited is constitutionally mandated and is nothing new because it is being used in other proceedings involving bonds. Surety cites rule 46(f)(2) of the Federal Rules of Criminal Procedure, which permits a federal court to set aside a bail forfeiture in whole or in part if "it appears that justice does not require bail forfeiture." The six non-exclusive factors identified by the Ninth Circuit to inform a court exercising this discretionary authority include (1) the defendant's willfulness in breaching a release condition; (2) the sureties' participation in apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the government; (4) mitigating factors; (5) whether the surety is a professional or a member of the family or a friend, and (6) *the appropriateness of the amount of the bond.* (*United States v. Amwest Surety Ins. Co.* (9th Cir. 1995) 54 F.3d 601, 603, italics added.)

In addition, Surety refers to the California statutes that apply to bonds other than bail bonds. In 1982, the Legislature clarified the law governing statutory bonds and undertakings by enacting the Bond and Undertaking Law, which is codified in Code of Civil Procedure sections 995.010 through 995.560. (*Moore v. Ohio Casualty Ins. Co.* (1983) 140 Cal.App.3d 988, 995, fn. 9; see Stats. 1982, ch. 998, § 1, p. 3659.) The Legislature specifically exempted bail bonds from the new statute. (Code Civ. Proc., § 995.020, subd. (c) ["provisions of this chapter do not apply to a bail bond or an undertaking of bail"].) The procedures established by the Bond and Undertaking Law required the beneficiary to file a motion to enforce the bond. (Code Civ. Proc., § 996.440.) The judgment obtained by the beneficiary against the principal and sureties is not the amount of the bond but "shall be in an amount determined by the court." (Code Civ. Proc., § 996.460, subd. (b).) Surety also refers to Civil Code section 2809, which states: "The obligation of a surety must be neither larger in amount nor in other respects

7

more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation."

        B.      <u>Facial Validity of Statutory Scheme</u>

Based on the facts of this case, which involve a defendant who relied on the early-out provisions of section 1269b that set the amount of his bail according to the county's bail schedule, we interpret Surety's arguments as being limited to the forfeiture of bail bonds posted under the early-out method of release from custody. Stated another way, Surety's argument does not extend to cases where the amount of bail is set by the trial court and is subject to the principles set forth in *In re Humphrey*, *supra*, 11 Cal.5th 135. Although Surety has avoided characterizing its arguments as a facial challenge, Surety's arguments and proposal for revising the sum-certain nature of bail forfeiture proceedings strongly imply the asserted unconstitutionality resides within the existing statutory scheme, not simply how it was applied to the bail bond posted for Quinonez. Accordingly, we interpret Surety's argument as including a facial challenge to the statutory provisions governing the forfeiture of bail set under the early-out provisions of section 1269b.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." (*United States v. Salerno* (1987) 481 U.S. 739, 745 [facial challenge to federal Bail Reform Act failed].) Here, Surety has not surmounted this difficulty and demonstrated there are no circumstances in which the statutory scheme is constitutional. Stated without a double negative, Surety has not shown the amount of bail posted under the county's bail bond schedule would always be excessive for purposes of the Eighth Amendment. In short, sometimes the amount set would be too small and sometimes the amount set would be just right. In those situations, the

Excessive Fines Clause would not be violated.  Thus, Surety has not carried the heavy burden of establishing a facial challenge to the constitutionality of a statutory scheme.

Furthermore, to the extent Surety's argument is interpreted as asserting a violation of the Due Process Clause rather than a violation of the Excessive Fines Clause, we conclude the criminal defendant had meaningful opportunities to address the amount of the bail bond by raising the issue at his initial court appearance and by motion.  (See § 1270.2 [formal bail hearing].)  The essence of due process is notice and the opportunity to be heard " 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333.)  We conclude the criminal defendant had such opportunities and, instead, chose the early-out method of release under section 1269b.

If Surety is contending *its* right to due process was violated, we conclude that "there is under the Penal Code both notice to the surety and the opportunity to be heard [citations] sufficient to satisfy the California constitutional due process requirements." (*County of Los Angeles v. Amwest Surety Ins. Co.* (1983) 147 Cal.App.3d 961, 967.) Here, Surety had the opportunity to have its excessive fine theory heard as part of its motion to set aside summary judgment, discharge the forfeiture, and exonerate bail. Accordingly, the statutory scheme does not, on its face, violate the Due Process Clause.

C.    Constitutional Violation Limited to the Facts of this Case

Next, we consider Surety's argument as asserting a constitutional violation occurred in the particular circumstances of this case.  We first address this argument as presented to the trial court and then address the version presented on appeal.

1.    *Arguments Made Below*

In the trial court, Surety's motion to set aside the summary judgment argued the court should vacate the forfeiture and exonerate bail because, when setting bail, the court failed to conduct reasonable inquiries to ensure the amount of bail was the minimum necessary to ensure their interest and, as a result of the failure to conduct such inquiries,

9

the amount of bail was an unenforceable penalty. This argument is easily rejected because the reason the trial court did not inquire into the amount of bail was that Quinonez used the early-out method of release and posted the amount of bail set by the county's bail schedule. The trial court cannot be faulted for failing to conduct a reasonableness inquiry when a defendant obtains his release before the court has an opportunity to consider his case. Here, the court had little chance of intervening because Quinonez was released the second day after his arrest.

Surety's motion to set aside the summary judgment also argued the bail penalty was based on an unconstitutional order, the bond was void as a result, and the trial court was without jurisdiction to enforce the unconstitutional penalty. During the trial court proceedings, Surety was asserting "a jurisdictional error was made in the formation of the contract." The foundation of this argument—that the amount of the bail bond was based on an unconstitutional order—has not been established. No judicial officer entered an order because Quinonez took advantage of the early-out method of release under section 1269b and agreed to post the amount of bail listed in the county's bail schedule. The absence of an order from a judicial officer means the court did not commit a jurisdictional error in the formation of the bail contract.

Surety's motion to set aside the summary judgment also presented an argument based on contract law, contending that because bail was set based on an unconstitutional order that did not reasonably calculate the amount of bail, the bond was void as an unenforceable liquidated damages provision. Surety supported this argument by asserting "the mere fact that a defendant is somehow able to post bail and be released, does not mean that bail was lawful or constitutionally set, or that it is not excessive." Again, the foundation for this argument was the existence of an unconstitutional order setting bail. Bluntly stated, this argument is not well-tailored to the situation presented

10

when the criminal defendant obtains an early release under section 1269b and the amount of bail is never addressed by a judicial officer.

### 2. *Arguments on Appeal*

The arguments presented in the trial court asserted a constitutional violation occurred at the time the amount of bail was set.  Surety's arguments have evolved.  In its appellant's reply brief and at oral argument, Surety distinguishes between setting the amount of the bail bond, which occurs early in the process, and determining the amount forfeited, which occurs after the criminal defendant has failed to appear in court.  (See § 1305, subd. (a)(1) [forfeiture for nonappearance].)

The California statutes governing bail bond, unlike the statutes governing other bonds, do not require the government to bring a motion addressing the amount of the forfeiture.  Therefore, for purposes of this appeal, we assume the government has the burden of showing the amount of the forfeiture is reasonable under the circumstances when a surety brings a motion to set aside the summary judgment that explicitly challenges the forfeiture as an excessive fine.  Here, Surety filed a motion and raised such a challenge.  As a result, we will consider whether the record contains sufficient evidence to support an implied determination by the trial court that the government carried its burden in this case.  Before reviewing the sufficiency of the evidence, we examine the nature of the burden of proof imposed on the government.

We conclude the government's initial burden for proving the reasonableness of the amount of the forfeiture must take into account the government's access to information when a criminal defendant relies on the early-out method of release and absconds before any court proceedings are held in court.  (See Evid. Code, § 500 [allocation of burden of proof]; *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1086–1088.)  In such a situation, the government no longer has access to the criminal defendant because the defendant has not performed his agreement and the surety has not performed

11

its agreement to surrender the defendant into custody. In comparison, the surety has, or usually will have, the cooperation of the indemnitors in addressing the forfeiture of bail. Also, when a surety raises an excessive fines argument, it is going back on its explicit agreement for the entry of summary judgment "for the amount of its undertaking" if the defendant does not appear for scheduled court dates. Based on these factors, we conclude that if the government makes an adequate preliminary showing of the reasonableness of the amount of bail, the burden shifts to the surety to establish that forfeiting the entire amount results in an excessive fine.

Here, the record contains ample evidence to support the determination that the government carried its initial burden of showing the amount of bail was reasonable. First, we consider the criminal charges. They involved transporting heroin and possessing it for sale. The nature of the crime supports the inference that the defendant has access to funds and is not indigent. In comparison, a homeless person charged with shoplifting at a grocery store supports the opposite inference. Second, we consider the amount of time that passed between Quinonez's arrest and when he obtained bail. The day after his arrest, Surety executed the bail bond for $50,000 in exchange for a premium of $5,000. Thus, the speed with which Quinonez posted bail indicated he had ready access to the premium amount and sufficient cash or other collateral to convince Surety to undertake the obligations in the $50,000 bail bond. Third, the docket shows no entries indicating Quinonez attempted to have the amount of his bail reduced after he obtained his release from jail. Fourth and most obvious, the amount of bail set was insufficient to prevent Quinonez from absconding. This fact supports the inference that Quinonez decided his best interests were served by forfeiting bail and avoiding prosecution on the heroin charges.

Based on these facts, we conclude, as a matter of law, that the government carried its initial burden of showing the amount of the forfeiture was not excessive under the

12

Eighth Amendment. As a result, the burden shifted to Surety to demonstrate the $50,000 forfeiture was excessive under the circumstances of this case. Surety presented no evidence on the excessiveness of the forfeiture, instead relying on its argument that the government failed to carry its burden. Therefore, we conclude that in the circumstance presented, the forfeiture of the entire amount of the $50,000 bail bond did not violate the Excessive Fines Clause or other constitutional provision.

## II. CONSEQUENCES OF THE CONSTITUTIONAL VIOLATION

As a separate and independent ground for the affirmance of the trial court, we assume that a constitutional violation occurred and address the consequences of that constitutional violation. The consequences were discussed by the Third Appellate District in *Accredited '19* and more recently by the Second Appellate District in *North River '20*. The Third Appellate District assumed a violation of the criminal defendant's constitutional rights and then concluded "that violation does not void the underlying bail bond." (*Accredited '19*, *supra*, 34 Cal.App.5th at p. 897.) Similarly, the Second Appellate District concluded any noncompliance with constitutional requirements for setting bail "would, at best, render the bail order voidable *as to the defendant*, *not as to the surety*." (*North River '20*, *supra*, 48 Cal.App.5th at p. 235.) We join these decisions and adopt the legal principle that a constitutional violation in setting bail (which also sets the amount of the forfeiture) does not render the bail bond unenforceable as to the surety. Applying this principle to the facts of this case leads to the conclusion that the bail bond is enforceable in its full amount and, therefore, the trial court correctly entered summary judgment.

In summary, the Surety explicitly agreed to the forfeiture procedures set forth in sections 1305 and 1306 and to the amount of the consent judgment. When such a contract between a surety and the government is breached, the bond should be enforced. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657–658.)

13

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

Filed 6/4/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>ACCREDITED SURETY & CASUALTY COMPANY, INC.<br><br>     Defendant and Appellant. | F080431<br><br>(Super. Ct. No. CR-18-000990)<br><br><br>**ORDER MODIFYING OPINION AND GRANTING PUBLICATION REQUESTS [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on May 7, 2021, be modified as follows:

1. On page 4, delete the words "the court" from the second sentence of the first paragraph and replace with the words "Judge Scott Steffen."

2. On page 4, delete the words "The court" from the second sentence of the sixth paragraph and replace with the words "Judge Steffen."

3. On page 5, delete the first paragraph under **DISCUSSION** and replace with the following:

> Our published opinions addressing the forfeiture or exoneration of a bail bond often include a general overview of the contractual nature of bail bonds, the statutory scheme governing the forfeiture of bail and related proceedings (§§ 1305–1308), the principles applied when construing the bail statutes, and the standards of appellate review. (E.g., *People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 999–1000 [statutory framework]; *People v. Accredited*

*Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 555–557.) Such an overview need not be repeated here. (See Cal. Const., art. VI, § 14 [appellate decisions "shall be in writing with reasons stated"].)

4.　　On page 8, delete the words "not shown" from the third sentence of the last paragraph and replace with the words "failed to show" so that the sentence reads as follows:

> Stated without a double negative, Surety has failed to show the amount of bail posted under the county's bail bond schedule would always be excessive for purposes of the Eighth Amendment.

5.　　On page 11, delete the second and third full paragraphs under *2. Arguments on Appeal*, and insert the following five paragraphs and footnote:

> Under the statutory scheme currently governing bail bonds, the point in the proceedings for the parties and the court to address a surety's claims that the forfeiture amount is unconstitutionality excessive is when the surety brings a motion to set aside the summary judgment, discharge the forfeiture, and exonerate bail. Here, Surety's motion explicitly challenged the forfeiture as an excessive fine. Thus, we conclude the issue was raised in the trial court at the appropriate time.

> A threshold issue to deciding Surety's constitutional challenge is which party has the burden of proof regarding the existence or nonexistence of a constitutional violation. The starting point for analyzing the allocation of the burden of proof is Evidence Code section 500, which provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." Under this statute's general rule, the burden of proof would be allocated to Surety as the moving party. However, there are exceptions and, in certain circumstances, "courts may alter the normal allocation of the burden of proof." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1188.) Here, the parties have identified no law—that is, constitutional provision, statute, or judicial decision (Evid. Code, § 160)—that provides for the allocation of the burden of proof in the specific procedural context of a surety challenging the constitutionality of the forfeiture of the entire amount of a bail bond set pursuant to the early-out method authorized by section 1269b. Consequently, we consider whether we should create a judicial exception to the general rule and shift the allocation of the burden of proof from the moving party.

2

"In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: [1] the knowledge of the parties concerning the particular fact, [2] the availability of the evidence to the parties, [3] the most desirable result in terms of public policy in the absence of proof of the particular fact, and [4] the probability of the existence or nonexistence of the fact." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 89; see *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 660–661.) In this case, the parties did not address these factors in the trial court, and Surety has not presented a factor-by-factor analysis in its appellate briefs.

Due to the manner in which the allocation issue has been developed in this appeal, we do not decide it. Instead, we assume for purposes of this appeal that, when a surety brings a motion to set aside the summary judgment that challenges the amount of the forfeiture as an excessive fine, the government has the initial burden of showing the amount of the forfeiture is reasonable under the circumstances.[3] We further assume that if the government makes an adequate initial showing of the reasonableness of the amount of bail, the burden shifts to the surety to establish that forfeiting the entire amount results in an excessive fine. (Cf. *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802–804 [burden shifting framework in employment discrimination action]; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354–356 [plaintiff's initial burden to establish prima facie case of discrimination; burden shifted to employer to rebut discrimination].)

These assumptions take into account the government's access to information when a criminal defendant relies on the early-out method of release and absconds before any court proceedings are held in court. (See Evid. Code, § 500 [allocation of burden of proof]; *Masellis v. Law Office of Leslie F. Jensen*, *supra*, 50 Cal.App.5th at pp. 1086–1088.) In such a situation, the government no longer has access to the criminal defendant because the defendant has not performed his agreement and the surety has not performed its agreement to surrender the defendant into custody. In

---

**3** As a result of this assumption, this opinion does not establish precedent binding superior courts on how to allocate the burden of proof. The question remains open and superior courts may decide whether to follow the general rule or create an exception based on the evidence, authorities and analysis presented in the case before them. (See generally, *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1086–1088 [specific approach adopted by California court for deciding whether to alter the allocation of the burden of proof].)

comparison, the surety has, or usually will have, the cooperation of the indemnitors in addressing the forfeiture of bail. Also, a surety's excessive fines argument contradicts its explicit agreement for the entry of summary judgment "for the amount of its undertaking" if the defendant does not appear for scheduled court dates.

6. On page 12, delete the first sentence of the first full paragraph beginning with "Here, the record contains ..." and replace with the following two sentences:

Based on the foregoing assumptions about the burden of proof, we consider whether the record contains sufficient evidence to support an implied determination by the trial court that the government carried its initial burden in this case. We conclude the record contains ample evidence to support the determination that the government demonstrated the amount of bail was reasonable under the circumstances.

7. On page 12, the sentence in the first full paragraph beginning with "First, we consider ...," begins a new paragraph.

There is no change in the judgment.

As the nonpublished opinion filed on May 7, 2021, in this matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

FRANSON, Acting P.J.

WE CONCUR:

SNAUFFER, J.

DE SANTOS, J.

4